UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA MARTINSON,

        Plaintiff,

v                                              Case No.

REGENTS OF THE UNIVERSITY OF
MICHIGAN, a constitutional body corporate;
CAROL LOVELAND-CHERRY,                      ***DEMAND FOR JURY TRIAL***
individually and in her official capacity,
JUDITH LYNCH-SAUER, individually
and in her official capacity, and
BONNIE HAGERTY, individually and
in her official capacity,

        Defendants.
_____/

SCHWARTZ LAW FIRM, P.C.
By:  Jay A. Schwartz (P45268)
       Miles L. Uhlar (P65008)
Attorney for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
_____/

<u>PLAINTIFF'S COMPLAINT</u>

      NOW COMES Plaintiff, Linda Martinson, by and through her attorney, Schwartz Law

Firm, P.C., and for her Complaint against Defendant, Regents of the University of Michigan, and

Defendants, Carol Loveland-Cherry, Judith Lynch-Sauer, and Bonnie Hagerty, in their individual

and official capacities, states:

1

<u>JURISDICTION AND VENUE</u>

1.      This is an action authorized and instituted pursuant to 42 USC § 1983, secondary to the deprivation of Plaintiff's rights to due process under the Fourteenth Amendment to the United States Constitution and the Michigan Constitution.

2.      Plaintiff, Linda Martinson, is a resident of Michigan, and has resided within the Eastern District of Michigan at all times relevant to this proceeding.

3.      Defendant, Regents of the University of Michigan (hereafter "Defendant University of Michigan"), is a constitutional body corporate operating within Washtenaw County, Michigan, within the Eastern District of Michigan.

4.      Defendant, Carol Loveland-Cherry (hereafter "Defendant Loveland-Cherry"), is/was at all time relevant to this complaint Executive Associate Dean for Academic Affairs at The University of Michigan School of Nursing.  Defendant Loveland-Cherry is also a Professor at The University of Michigan School of Nursing.

5.      Defendant, Judith Lynch-Sauer (hereafter "Defendant Lynch-Sauer"), is/was at all times relevant to this complaint Director for the Office of Student Affairs at The University of Michigan School of Nursing.  Defendant Lynch-Sauer is also a Clinical Assistant Professor at The University of Michigan School of Nursing.

6.      Defendant, Bonnie Hagerty (hereafter "Defendant Hagerty"), is/was at all times relevant to this complaint Director for Undergraduate Programs at The University of Michigan School of Nursing.  Defendant Hagerty is also an Associate Professor at The University of Michigan School of Nursing.

7.     The events giving rise to this cause of action occurred in Washtenaw County, Michigan, which is within the Eastern District of Michigan.

8.     Jurisdiction is appropriate in this Court pursuant to 29 USC § 1441 (federal question jurisdiction).

9.     Venue is appropriate in this Court pursuant to 28 USC § 1391.

<u>COMMON ALLEGATIONS/BACKGROUND FACTS</u>

10.     Plaintiff was a student at The University of Michigan School of Nursing from August of 2007 through her expulsion in November of 2007.

11.     During this time period, Plaintiff was a student in the Second Career BSN Program, a prestigious and accelerated Second Career Nursing Program.

12.     Plaintiff came to the prestigious BSN program with an excellent record of academic achievement throughout her educational career.

13.     In September of 2007, Plaintiff began to have clinical performance problems in a class known as N221.

14.     A variety of factors contributed to these performance problems, including the stress caused by the unexpected diagnosis of medical problems with Plaintiff's daughter.

15.     Plaintiff first advised Diane Bohn, the clinical instructor of N221, of her daughter's medical problems on September 17, 2007.  Ms. Bohn suggested that Plaintiff leave the program because it was going to be accelerated and stressful.

16.     From September 17, 2007 forward, Plaintiff's relationship with Diane Bohn deteriorated rapidly.

17.     After September 17, 2007, Diane Bohn began documenting perceived problems with Plaintiff's clinical performance.

18.     At different times after September 17, 2007, Diane Bohn involved Defendants Hagerty, Lynch-Sauer, and Loveland-Cherry with her ongoing issues with Plaintiff in N221. Bohn e-mailed Defendant Hagerty on or about September 24, 2007, and met with her on or about October 5, 2007.  Plaintiff first met with Lynch-Sauer on October 2, 2007, to discuss problems in N221 clinical.  Diane Bohn met with Defendant Lynch-Sauer regarding Plaintiff on or about October 9, 2007; Defendants Lynch-Sauer and Hagerty also met with Plaintiff on that date.  On or about October 12, 2007, Bohn and Defendants Lynch-Sauer and Hagerty met with Plaintiff. Defendants offered criticism to Plaintiff during this meeting to which Plaintiff was not receptive. Upon information and belief, from at least this date forward, Defendants Lynch-Sauer and Hagerty had developed a strong, personal dislike for Plaintiff, wanted to expel her, and were looking for a justification for the same.

19.     On or about October 16, 2007 Diane Bohn filed a report with Defendant Loveland-Cherry detailing supposed honor code violations by Plaintiff.

20.     On or about October 17, 2007, Plaintiff was asked to attend another meeting with Defendant Hagerty and Defendant Loveland-Cherry.   Defendants again offered criticism to Plaintiff, which Plaintiff was unreceptive to.  Defendant Loveland-Cherry called The University of Michigan Department of Public Safety (DPS) to the meeting.   At Defendant Loveland-Cherry's request, DPS issued Plaintiff a no-trespass citation advising her she could be arrested if she entered "any University owned or leased buildings or portions thereof".

4

21.     At the October 17, 2007 meeting, Defendant Loveland-Cherry also gave Plaintiff a letter advising her that the School of Nursing was acting on reports of a possible violation of the Student Code of Academic and Professional Conduct, AKA student honor code.  It did not specify who had made the complaint, what the charges were, or what provision of the code was involved.

22.     Upon information and belief, from at least this date forward, Defendant Loveland-Cherry had developed a strong personal dislike for Plaintiff, wanted to expel Plaintiff, and was looking for justification to do the same.

23.     On or about October 18, 2007, Defendant Loveland-Cherry submitted a request to Dr. E. Royster Harper, Vice-President for Student Affairs, requesting that Linda Martinson be immediately removed from the School of Nursing.  This request was apparently accompanied by a seven-page chronology of various incidents that had supposedly disrupted the educational environment and "caused faculty, students, and staff to feel threatened and fear for their personal safety".  Defendant Loveland-Cherry's request also asked that Plaintiff be immediately removed for mental health reasons.

24.     Upon information and belief, the claimed incidents which caused individuals to feel "threatened" were vague descriptions of Plaintiff coming too close to them physically while speaking, not following social cues to end conversations at appropriate times, and speaking loudly in public places – there were never any genuine complaints about Plaintiff threatening anyone with bodily harm, or anyone ever saying they thought Plaintiff was going to strike them.

25.     The complaints and incidents cited by Defendant Loveland-Cherry in her request to have Plaintiff immediately removed from the School of Nursing –  particularly as they related

to "fear for personal safety" – were exaggerated, overblown, and motivated by personal animosity held by Defendants towards Plaintiff, and their desire to expel her.

26.    Vice President Harper referred Defendant Loveland-Cherry's request for Plaintiff's immediate removal to the Office of Student Conflict Resolution for review and evaluation based on case precedent for suspension for behavioral misconduct and best practice policy recommendations in the field.

27.    The Office of Student Conflict Resolution (OSCR) Director, Defendant Jennifer Schrage, reviewed Defendant Loveland-Cherry's request for immediate/emergency suspension, and on October 19, 2007 issued a written memorandum indicating their view that there was no basis for immediate removal (there was no threat of immediate danger).

28.    On October 22, 2007,   Vice President Harper issued a written memorandum to Defendant Loveland-Cherry.  This memorandum agreed with Dean of Student's and OSCR's view that there was no basis for immediate removal (there was no threat of immediate danger). Vice President Harper further advised she had had Dean of Students Susan Eklund review the Mental Health component of Defendant Loveland-Cherry's request, and she found there was no basis for removal on such grounds.   Dean Eklund recommended that Plaintiff's behavior continue to be monitored, and that she be referred to CAPS for counseling.

29.    Despite Vice President Harper's, Dean Eklund's, and OSCR's recommendations, Defendants remained intent on expelling Plaintiff.  They refused/failed to ask DPS to lift the no trespass warning barring Plaintiff from entry into campus buildings.

30.    On or about October 30, 2007, Defendant Loveland-Cherry scheduled a "preliminary inquiry hearing" regarding Diane Bohn's report regarding supposed honor code

violations for Plaintiff.  Defendant Loveland-Cherry set this "preliminary inquiry" for November 5, 2007 – the week of Plaintiff's scheduled final examinations/assignments.

31.     Per the University of Michigan Undergraduate handbook, this "preliminary inquiry" is not the hearing at which it is determined if a code violation has occurred and what the outcome should be, rather it is an informal inquiry designed to see if a resolution can be reached. If the complaint is not resolved at the preliminary inquiry, a Committee on Academic Admissions and Scholastic Standing (CAASS) Hearing Panel is then scheduled to determine if a code infraction occurred, and if so, what sanctions were appropriate.

32.     The initial inquiry was held on November 5, 2007.  Plaintiff could not attend.  No conclusions made at the initial inquiry were immediately released.   On the morning of November 5, 2007, immediately after the initial inquiry, the date and time for the Final Hearing was scheduled.  All other participants were notified that day, but no attempt was made to provide notice to Plaintiff.

33.     On November 5, 2007, Defendant Hagerty began attempting to solicit written complaints about Plaintiff from students who had not made them previously, in an effort to get Plaintiff expelled.

34.     On the evening of November 5, 2007, DPS advised Defendant Loveland-Cherry they did not view Plaintiff as an immediate threat or danger.

35.     On November 6, 2007, Defendant Loveland-Cherry spoke with Jennifer Schrage, director of the Office of Student Conflict Resolution regarding Plaintiff's case.  Defendant Loveland-Cherry admitted to Schrage that there was still no evidence of Plaintiff being an immediate danger.

7

36.     On November 7, 2007, less than 24 hours after admitting to Schrage that Plaintiff was not an immediate danger, and within 48 hours of DPS advising her there was no immediate danger, Defendant Loveland-Cherry issued a memorandum setting forth the findings of the preliminary inquiry on November 5th.

37.     The November 7th memorandum advised that the complaint against Plaintiff would have to proceed to a CAASS Hearing Panel, a sub-committee of the CAASS.

38.     The November 7th memorandum vaguely asserted that "the specific charge" to be addressed by the CAASS panel was "behavior in N221 with clinical staff, faculty, and student peers that is not consistent with the American Nursing Association Code of Ethics".

39.     Contrary to what DPS had advised her on November 5th, and contrary to what she had admitted to Schrage on November 6th, the November 7th memorandum indicated that the CAASS hearing had to take place on an emergency basis, preferably by the end of the current week.

40.     The November 7th memorandum further advised that the CAASS hearing panel would occur at 1:00 p.m. on November 9, 2007 (within 48 hours).

41.     Defendant Loveland-Cherry approached Plaintiff in the School of Nursing on the afternoon of November 7, 2007 and attempted to hand Plaintiff some type of packet.  Because Defendant Loveland-Cherry had already had her served with a trespass warning, and because she was scared of Defendant Loveland-Cherry (whom she thought might have her arrested), Plaintiff would not accept the packet.  At no time during this encounter in the hallway on November 7th did Defendant Loveland-Cherry attempt to tell Plaintiff what the packet was, or that a CAASS hearing had been scheduled for November 9th.

42.     At 1:48 p.m. on November 7, 2007, Defendant Loveland-Cherry sent Plaintiff an e-mail with the subject title "Delivery of Packet of Information".   The e-mail contained an unnamed attachment.   The body of the e-mail, when opened, stated nothing about the CAASS hearing on November 9, 2007.   The unnamed attachment was the November 7th memorandum.

43.     Plaintiff did not receive notice of the November 9, 2007 CAASS hearing before it occurred.

44.     At some point on or around November 7, 2007, Defendant Lynch-Sauer sent e-mails to several of Plaintiff's classmates requesting that they make complaint against Plaintiff, which could be used at the November 9, 2007 hearing.

45.     These solicitations by Defendant Lynch-Sauer went so far as to recommend dates and incidents she desired Plaintiff's classmates to complain about.

46.     Several of Plaintiff's classmates complied with Defendant Lynch-Sauer's solicitation, and composed e-mails between November 7th and 9th, 2007, regarding various incidents of supposed "danger" and "threatening situations" that had occurred weeks to months before (which they had not formally complained about contemporaneous to their supposed occurrence).

47.     The CAASS hearing occurred on November 9, 2007.   Plaintiff had no idea it was occurring, and did not attend.

48.     At the CAASS hearing, Diane Bohn – the individual who had actually made the complaint at issue, and who had more contact with Plaintiff than any other witness present – appeared and testified.   Ms. Bohn did not recommend Plaintiff's expulsion.   Instead, she

concluded that Plaintiff was not happy and healthy, and recommended that her progression be restricted until she addressed some personal issues.

49.     Defendants Lynch-Sauer and Hagerty appeared and testified at the hearing. Defendant Lynch-Sauer presented the complaints she had solicited.  Both Defendants Lynch-Sauer and Hagerty recommended Plaintiff's permanent expulsion, Hagerty saying, "I think this is an immediate, serious, safety issue…"

50.     The CAASS committee followed the recommendation of Defendants Hagerty and Lynch-Sauer, and on November 9, 2007 recommended Plaintiff's permanent expulsion.

51.     On November 13, 2007, Defendants (via the Department of Public Safety) issued Plaintiff a second trespass warning advising she could be arrested if she entered any University owned building.

52.     On November 16, 2007, the whole of CAASS approved the recommendation, and Plaintiff was immediately and permanently expelled from the School of Nursing.

53.     Plaintiff timely filed an internal administrative appeal to her expulsion pursuant to the University of Michigan's internal policies.  Specifically, Plaintiff argued it was unreasonable and unfair that the CAASS hearing was scheduled 4 days after the initial inquiry, and that Defendants withheld notice and did not even attempt to give her notice of the CAASS hearing until 48 hours before it was set to begin, and collected "evidence" after attempted notice and did not disclose it prior to the hearing.

54.     Plaintiff's internal appeal came up before a 5 member panel (3 School of Nursing professors and 2 School of Nursing students) on August 14, 2008.

55.     Plaintiff won the appeal; the panel issued findings stating that the short turnaround between the November 5th initial inquiry and November 9th hearing did not afford Plaintiff reasonable time to prepare and engage counsel.  The panel opined that at least 20 business days should have been provided.  The panel further opined that while it was appropriate for the School of Nursing to be concerned about safety, less drastic measures than expulsion (such as suspension) were appropriate in Plaintiff's case.

56.     The appellate panel recommended that a new CAASS hearing panel be convened.

57.     The School of Nursing blatantly ignored all aspects of the appellate panel's recommendations, and instead advised Plaintiff in writing on August 28, 2008 it was upholding her permanent expulsion.  On the same day, the Department of Public Safety, issued a third Trespass Warning barring Plaintiff from the entire campus for an indefinite period of time, and subjecting her to arrest on sight.

58.     Defendants' actions have cause Plaintiff severe and permanent damages.

COUNT I

42 USC §1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

59.     Plaintiff repeats and realleges the facts set forth in paragraphs 1-58 above.

60.     As a student at a public university, Plaintiff had a constitutionally protected fundamental right and interest in continuing her education at The University of Michigan School of Nursing.

61.     As a student at a public university, Plaintiff had a constitutionally protected property interest in continuing her education at The University of Michigan School of Nursing.

62.     Plaintiff's reputation and her opportunity to pursue future employment constitute a constitutionally protected liberty interest.

63.     Defendants' expulsion of Plaintiff was arbitrary and capricious and was motivated by bad faith.

64.     There was no rational basis for Plaintiff's expulsion.

65.     There was no rational basis for:

- scheduling Plaintiff's CAASS hearing 4 days after the initial inquiry;

- attempting to give Plaintiff only 48 hours notice of the hearing;

- stating that the hearing had to be conducted on an expedited basis when VP Harper, Dean Eklund, OSCR, and DPS had all concluded/recommended there was no immediate threat of danger;

- issuing Plaintiff a no trespass citation barring her from University buildings, and maintaining it even after VP Harper's review;

- soliciting student complaints to try and create a false impression of an emergency to get an immediate expulsion;

- deliberately inaccurately portraying incidents involving speaking too close to another person, not following social cues to terminate conversations, and speaking loudly in public as dangerous situations potentially involving bodily harm;

- ignoring the recommendations of the August 14, 2008 appellate panel;

- issuing second trespass warning barring Plaintiff from entering any university buildings; or

- issuing third trespass warning barring Plaintiff from entire campus.

66.     Defendants' actions shock the conscience.

67.     Defendants deprived Plaintiff of her constitutionally protected right to continue her education, thereby violating the due process requirements of the Fourteenth Amendment to the United States Constitution.

68.     Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, by their conduct showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

69.     Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

70.     The acts of Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, as described above represent official policy of Defendant University of Michigan and are attributable to Defendant University of Michigan.

71.     At all times material hereto, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

72.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to: monetary damages, loss of her nursing school education and nursing degree, time and resources, loss of career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation.

COUNT II

42 USC §1983 – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

73.     Plaintiff repeats and realleges the facts set forth in paragraphs 1-72 above.

74.     As a student at a public university, Plaintiff had a constitutionally protected fundamental right and interest in continuing her education at The University of Michigan School of Nursing.

75.     As a student at a public university, Plaintiff had a constitutionally protected property interest in continuing her education at The University of Michigan School of Nursing.

76.     Plaintiff's reputation and her opportunity to pursue future employment constitute a constitutionally protected liberty interest.

77.     Plaintiff was not afforded an unbiased, fair, careful, and deliberate review process either prior to or following her expulsion from the University of Michigan School of Nursing.

78.     The actions of Defendants Loveland-Cherry, Hagerty, Lynch-Sauer and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, deprived Plaintiff of sufficient notice and an opportunity to be heard.

79.     The acts of Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, as described above represent official policy of Defendant University of Michigan and are attributable to Defendant University of Michigan.

80.     At all times material hereto, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

14

81.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to: monetary damages, loss of her nursing school education and nursing degree, time and resources, loss of career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation.

COUNT III

MICHIGAN CONSTITUTION –SUBSTANTIVE DUE PROCESS

82.    Plaintiff repeats and realleges the facts set forth in paragraphs 1-81 above.

83.    As a student at a public university, Plaintiff had a constitutionally protected fundamental right and interest, under the Michigan Constitution, in continuing her education at The University of Michigan School of Nursing.

84.    As a student at a public university, Plaintiff had a constitutionally protected property interest, under the Michigan Constitution in continuing her education at The University of Michigan School of Nursing.

85.    Plaintiff's reputation and her opportunity to pursue future employment constitute a constitutionally protected liberty interest under the Michigan Constitution.

86.    Defendants' expulsion of Plaintiff was arbitrary and capricious and was motivated by bad faith.

87.    There was no rational basis for Plaintiff's expulsion.

88.    There was no rational basis for:

- scheduling Plaintiff's CAASS hearing 4 days after the initial inquiry;

- attempting to give Plaintiff only 48 hours notice of the hearing;

- stating that the hearing had to be conducted on an expedited basis when VP Harper, Dean Eklund, OSCR, & DPS had all concluded/recommended there was no immediate threat of danger;

- issuing Plaintiff a no trespass citation barring her from University buildings, and maintaining it even after VP Harper's review;

- soliciting student complaints to try and create a false impression of an emergency to get an immediate expulsion;

- deliberately inaccurately portraying incidents involving speaking too close to another person, not following social cues to terminate conversations, and speaking loudly in public as dangerous situations potentially involving bodily harm;

- ignoring the recommendations of the August 14, 2008 appellate panel;

- issuing second trespass warning barring Plaintiff from entering any university buildings; or

- issuing third trespass warning barring Plaintiff from entire campus.

89.    Defendants' actions shock the conscience.

90.    Defendants deprived Plaintiff of her constitutionally protected right to continue her education, thereby violating the due process requirements of the Michigan Constitution.

91.    Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, by their conduct showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

92.    Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

93.     The acts of Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, as described above represent official policy of Defendant University of Michigan and are attributable to Defendant University of Michigan.

94.     At all times material hereto, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

95.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to: monetary damages, loss of her nursing school education and nursing degree, time and resources, loss of career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation.

COUNT IV

MICHIGAN CONSTITUTION – PROCEDURAL DUE PROCESS

96.     Plaintiff repeats and realleges the facts set forth in paragraphs 1-95 above.

97.     As a student at a public university, Plaintiff had a constitutionally protected fundamental right and interest, under the Michigan Constitution, in continuing her education at The University of Michigan School of Nursing.

98.     As a student at a public university, Plaintiff had a constitutionally protected property interest, under the Michigan Constitution, in continuing her education at The University of Michigan School of Nursing.

99.     Plaintiff's reputation and her opportunity to pursue future employment constitute a constitutionally protected liberty interest.

100.    Plaintiff was not afforded an unbiased, fair, careful, and deliberate review process either prior to of following her expulsion from the University of Michigan School of Nursing.

101.    The actions of Defendants Loveland-Cherry, Hagerty, Lynch-Sauer and other agents, representatives, and employees of Defendant University of Michigan, acting under color of state law and in concert with one another, deprived Plaintiff of sufficient notice and an opportunity to be heard.

102.    The acts of Defendants Loveland-Cherry, Hagerty, and Lynch-Sauer, and other agents, representatives, and employees of Defendant University of Michigan, as described above represent official policy of Defendant University of Michigan and are attributable to Defendant University of Michigan.

103.    At all times material hereto, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

104.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to: monetary damages, loss of her nursing school education and nursing degree, time and resources, loss of career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation.

COUNT V

<u>DECLARATORY RELIEF</u>

105.    Plaintiff repeats and realleges the facts set forth in paragraphs 1-104 above.

106.    Plaintiff hereby requests declaratory judgment pursuant to FRCP 57 and 28 USC § 2201.

107.    Because Plaintiff's expulsion was obtained without due process of law, it should be declared null and void.

108.    The Court should enter a declaratory judgment stating that Plaintiff's expulsion is null and void, and was obtained without due process of law.

COUNT VI

RESPONDENT SUPERIOR AND/OR AGENCY

109.    Plaintiff repeats and realleges the facts set forth in paragraphs 1-108 above.

110.    Defendants Loveland-Cherry, Lynch-Sauer, and Hagerty, as well as all other individuals mentioned by name in this complaint (other than Plaintiff) were employees and/or agents of Defendant University of Michigan at all times relevant to this complaint.

111.    Defendant University of Michigan is liable for any wrongful, illegal, unconstitutional, and/or tortuous acts or statements of Defendants Loveland Cherry, Lynch-Sauer, and Hagerty, as well as all other University of Michigan employees and/or agents.

112.    Defendants are jointly, severally, and/or alternatively liable to Plaintiff for all her injuries and/or damages.

RELIEF REQUESTED

Plaintiff requests that judgment be entered against Defendant University of Michigan, and Defendants Loveland-Cherry, Lynch-Sauer, and Hagerty, in their official capacity, as follows:

LEGAL RELIEF

- Compensatory Damages in whatever amount she is found entitled;

- Exemplary Damages  in whatever amount she is found entitled; and

- An award of interest, costs, and reasonable attorney fees.

19

<u>DECLARATORY RELIEF</u>

- Plaintiff's expulsion should be declared null and void;

- All trespass warnings should be declared null and void; and

- Plaintiff's transcript be wiped clean of a failing grade in N221.

<u>EQUITABLE RELIEF</u>

- An order stating that at Plaintiff's option, if at any time within 1 year of the entry of judgment she desires to return to the University of Michigan School of Nursing, she will be reinstated and placed in the position she would have been in but for Defendants' wrongdoing;

- An injunction prohibiting Defendants from committing any further acts of wrongdoing; and

- Whatever other equitable relief appears appropriate at the time of final judgment.

SCHWARTZ LAW FIRM, P.C.

By: <u>s/ Jay A. Schwartz</u>
      Attorney for Plaintiff
      37887 West Twelve Mile Road, Suite A
      Farmington Hills, Michigan 48331
      (248) 553-9400
      jschwartz@schwartzlawfirmpc.com
Dated:  September 9, 2009      (P45268)

<u>PLAINTIFF'S JURY DEMAND</u>

NOW COMES Plaintiff, Linda Martinson, by and through her attorney, Schwartz Law Firm, P.C., and hereby requests a trial by jury of the within cause.

SCHWARTZ LAW FIRM, P.C.


By:  <u>s/ Jay A. Schwartz</u>
Attorney for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
jschwartz@schwartzlawfirmpc.com
Dated:   September 9, 2008        (P45268)